Good morning, Your Honors. May it please the Court. My name is John Berg. I'm here on behalf of Appellant Bonaventure of East Wenatchee, LLC. Your Honors, the District Court rested its decision on Wilson v. City of Monroe. In Wilson, unlike here, the Federal Arbitration Act did not apply, and that importance cannot be understated, cannot be overstated. And I'm sorry, Your Honor, it is, it should be where this opinion begins and ends. I can see that perhaps you may already share that opinion from the kindred opinion you dispersed before the argument. Let me ask you, Mr. Berg, I was struck by some language in the Wilson case saying that a wrongful discharge claim was non-negotiable. Now, is it the law of Washington that the party plaintiff cannot negotiate a settlement with the party defendant? No, that is not the law. I didn't think so. That would be a tremendous difference from everywhere else in this country. So what did he mean by non-negotiable other than an arbitration agreement is not negotiable? The concept of negotiability and non-negotiability is addressed in the footnotes of the Wilson opinion with citation to Lingle, Alice Chalmers, we're talking about Supreme Court decisions about the prongs of 301 preemption. One is dependence on a collective bargaining agreement. Another is the non-negotiability of the rights at issue. Non-negotiability means it cannot be alienated or waived. And it is a matter that, as I understand it, cannot be negotiated by a union in the context of collective bargaining agreements. That is the distinction here between Wilson and this case, of course. There is no union. There is no collective bargaining. It is an agreement signed by this individual plaintiff. It is an agreement that is governed by the Federal Arbitration Act. There is mutual assent, and I believe Appley does not contest the actual making and formation of this arbitration agreement. So in Wilson, absent federal labor preemption under 301, there is no arbitration agreement that would bound Wilson, the plaintiff in that case. And that is why the court focused on federal labor preemption. Again, without it, there is no arbitration agreement. There's no need to exhaust remedies under a grievance arbitration provision within the CBA. The court, in the context of Wilson, in its very holding, states, because Wilson's wrongful termination, retaliatory discharge claims are based on non-negotiable rights established by state law, and because the claims are resolved without interpreting the CBA, the claims are not preempted by federal labor law. Clearly, there are two legal conclusions drawn by the court, one as to the claims being non-negotiable, the other as to the claims being resolved. Non-negotiable by the union, that's what they meant. That is my understanding of the law, yes, Your Honor. Non-negotiable also generally applies to matters of great public importance as opposed to individual interests, where the public's interests are at stake, it is non-negotiable. So the holding of Wilson makes two conclusions. Those are the prongs of federal labor preemption. Again, the footnotes make that clear. We see sometimes a judicial opinion relegates its case authority to footnotes. Sometimes that can make an opinion easier to read, but it also can make it easier to misunderstand. It can make it easier to cite and quote out of context. And that, Your Honors, that is what has happened here. This district court has ruled entirely on the basis of Wilson, as if its hands were labor preemption and therefore completely inapplicable in this context. The district court's ruling also is exactly the sort of judicial hostility that the FAA was designed to eradicate. It sets a rule, if we assume the meaning given to it by the district court and the appellee, it sets a rule that targets arbitration agreements. It's essentially that these are causes of action that are just too important. How do you deal with, in terms of, I'm just trying to understand Washington law, how do you deal with the Young case, Young versus, I'm not sure how to pronounce it, Feralgas? That seems to be inconsistent with your interpretation of Wilson. You will note from the footnotes in the Young opinion, the reference to the fact that the arbitration agreement there is not governed by the FAA. And that is all the difference, according to Kendred. Is it the footnote in Young? In Young, yes. Or in footnote two, I think it is. Yeah, yeah, it's footnote two. Okay, I'm sorry, I don't have the footnote number at hand. But that sounds correct. I would also add that- So you're saying that Young is actually consistent with your interpretation of Wilson? What I'm saying is Young is consistent with Smith that follows Wilson. Smith is a Supreme Court of Washington case, and so Young must have felt compelled to follow Smith as binding authority. Smith is only saying what Wilson said, which shouldn't be interpreted. You cannot take these legal concepts out of context and apply them and give them generic meaning where you have a private arbitration agreement that is not negotiated by a union, that is not collectively bargained. And so Young is following Smith. Young is very clearly giving greater weight to the public policy of Washington without any respect to the public policy embodied by the FAA, which, as we know, requires us to place agreements, arbitration agreements, on equal footing. We can't have rules that either directly or indirectly target arbitration agreements and make them, put them to a higher standard for enforceability. And I believe that's what we have from this district court's ruling by adopting what the FAA said. I didn't mention reservation for rebuttal. I would like to do that. In this case, I actually have never heard from Appley as to their position on several points, so I'd like to reserve the remainder of my time. Before you sit down, I've got a question. I'm reading your brief on page four. You write, on May 4, 2022, Bonaventure terminated Bangor, Bangor, after he stormed out of a Where's that in the record? Your Honor, the record is undeveloped in the sense that the motion to compel an arbitration provision, the merits of the case are not before the court. So we have never, I don't believe, had a record on what truly was the basis of the underlying events. So there's nothing in the record in front of us that tells me that that statement is true? There's nothing in the record that states that that's true or that the allegations have  The reason I'm concerned about that is that you do give me a citation as if it were in the record. You write that sentence and then you say ER 54, but ER 54 does not say that. And this is, you know, it's not fatal, but it's damaging to the other side. And there's nothing in the record that says that's true. I would argue, Your Honor, that that's an inadvertent mistake, certainly not something I intended to do. But I would also say I don't believe it's damaging to the issue presented to the court, which is Well, wait a minute. When somebody storms out saying I'm never going to return, that's not a very nice thing to say. And there's nothing in the record to support that. I do not have support in this record for that statement that is correct. As to its impact before the court, I think none in the sense that the court is not being asked to decide the merits of the case. I can draw my own conclusions as to whether or not that's potentially harmful. It certainly dirties them up a little bit. Storming out saying I'm not going to return is not a very nice thing to say. And there's nothing in the record to support that. I don't like that. And my apologies to the court in that respect. Do you want to return? Yes, if I could, the remainder of my time. Thank you. Very well. Unfortunately, we're similar size. My name is Paul Kuby of the Pleas of Court for the plaintiff and the respondent here repelling. Judge Rice, I think, made the right decision under Washington state law. There's a distinction without a difference. The actual quote of Wilson is as follows, the right to be free from wrongful termination and contravention of public policy is independent of any underlying contractual agreement between the employer and the employee. But isn't your adversary right that all this whole line of cases, those are all collective bargain agreement cases? As Judge Rice indicated, he didn't see that as a distinction without a difference under Washington law. But how about under federal law? That is to say, the claim here is that there's a right to arbitrate under the contract under federal law. Right. There's nothing to... And as I read the cases, your adversary describes them correctly. That is to say, they're all CBA cases. And I understand why that's so in the CBA. I mean, Wilson explains it. The collective bargaining agreement is entered into between the union and the employer. The individual employee has no say in it. And Washington's law then is, well, if it's a collective bargaining agreement and there's an independent statutory right, you can sue under the independent statutory right outside the arbitration process. But that's all reasoning based upon the fact that there's a collective bargaining agreement. In every appellate court case that he has cited, there was more than one cause of action. And I think the case law is pretty clear that when there are more than one cause of action, that all those... For example, if we had, as I mentioned in my brief, if we filed a state minimum wage claim, if we filed a state law or federal discrimination claim, then yes, it would be subject to the mandatory arbitration. But there isn't a single case. There's some cases that didn't rise it in the Western District that didn't get passed the district court that he claims because somebody didn't raise Wilson means that Wilson doesn't apply. But we're only making one cause of action, bringing one cause of action. And whether it was negotiated by a union, like for example, you can't negotiate to waive minimum wage act, right? We understand that. You can't negotiate to get out of the discrimination laws. We understand that. But in Washington, the employer can't negotiate whether you can terminate an employee for wrongful discharge in violation of public policy. And that's what Wilson case stands for, I believe. Can your man settle this case? Yeah. That's negotiation, right? Right. It is negotiation. And negotiation is regular terms. Of course, an employee can negotiate on that topic. And can't negotiate to go into an arbitration agreement? Under the Wilson, the argument is, I mean, we can go into the policy. One of the things that I think is significant in the facts of our case, and I think it's important that you brought this up in questioning my friend here, is that we're dealing with the most vulnerable people in this case. People that get their families pay $7,000 to $10,000 a month. And in this case, you have a corporation who at the outset makes an employee sign this agreement and immediately, within four months, terminates the employee because the employee was doing his job by going to the government entities and raising concerns about the lack of staffing and placement. You might win this in arbitration. Yeah. I think it's a very compelling case. But I also think it goes to the public policy here in the sense that, do we want employers, people that take care of our most vulnerable people, to be able to lie in wait, have them sign an agreement that's never going to see the light of day? I mean, they might see the light of a AAA arbitration, but you've got families in the balance here. And so I seized upon this language, I agree, in Wilson to stand for the proposition that, as a matter of public policy, and the judge agreed with me, Judge Rice, we're not talking about an out-there-on-the-limb judge, that in Washington, that is a distinction without a difference, that the right for an employee to can't negotiate, I don't want to misstate, I'm going to quote the law, embodies a strong state interest in protecting against violations of public policy, and that's Wilson, which cannot be altered, and therefore non-negotiable. Have there been any cases in Washington court that discuss Concepcion and kindred nursing? I mean, because these, I mean, Wilson's, you know, I was a law clerk when Wilson was decided, so I'm trying to put this in perspective here. I've got to tell you, I was pretty nervous getting ready for this today, and I've read a lot of cases, so there probably is, but I can't think of anything I want to talk about. Well, and the reason I ask is because I understand Wilson says what it says when it said it, but since that time, Supreme Court has been a, I think I could say, is a big fan of arbitration, and a big fan of saying if it's arbitrated, you've got to arbitrate it. And so I'm trying to understand, has the Washington Supreme Court or the Washington courts of appeals grappled with the shift in law and arbitration, like grappled with kindred nursing or Concepcion? I shepherdized Wilson, of course, like, you know, before I even cited it in my complaint, and no, I didn't find anything directly that was addressing it. I do know the Supreme Court has ruled, and I have the case in my briefcase, if you want me to get it, I can. The Washington Supreme Court case about arbitration seems to be, Washington State seems to be moving against arbitration. So there might be shifting political positions here, you know, divergent thoughts on the matter. I welcome the case that I had to read while everyone else was arguing today that you guys provided us. You know, and I would suggest, you know, against my position, you know, I would concede that. Anything further? No? Good. All right. Thank you, counsel. The Tejart versus Smith-Barney case is one in an almost identical context where you have a claim that has a vital state interest, one, it's a statutory claim against, for, I'm sorry, discrimination. And there's a recognition that there's a public policy, and they tackled the issue of whether or not this is something that could be arbitrated. Weighing the state interest versus the FAA's policy in favor of arbitration. And Tejart ordered compelled arbitration. Nearly identical context. Just giving life to the policy that, as you mentioned, the Supreme Court is so regularly weighed in on in favor of arbitration. Arbitration isn't a change in the substantive rights. It is a change in the venue. It is a change in the process for enforcement of those rights. And the Supreme Court has said that it is, we favor that. And I believe the ruling by this district court has, is contrary to the FAA, it is contrary to the Supreme Court's decisions, and contrary to Kindred, it creates a rule that says this is too important for arbitration. It doesn't say, it is very, the rule is specific to arbitration. There's no black swans involved or any confusion, nothing nebulous about it. It is, this is just too important to be resolved via arbitration. And for that reason, it flies in face of our binding authority here in the Supreme Court and Kindred and other cases saying we have to give life to the FAA. That's what Congress intended. I think, I still am not hearing a basis to reconcile the flood of cases compelling arbitration. I think the difference in context is going to, if we sorted all the cases, be the FAA applies versus a contract potentially not involving interstate commerce. I don't know, but there is no explanation for why all of these cases have said, let's compel the very claim that Appley is saying is immune from arbitration. I don't know if immunity is the correct word, but that's the effect of the rule that is, that Judge Rice has created in this case, giving life to Wilson in a way I think never intended. If the court has any questions, I'll answer them otherwise. Nothing further. We appreciate your argument and your briefing in this matter. This case is submitted and this panel is done for the day. Thank you. All rise. Oh, I forgot one thing. Happy birthday to my brother, David. He turns 48 today. He's a school teacher, public school teacher in the Bay Area, so I'll tell him to watch the video.
judges: FLETCHER, BEA, OWENS